# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

G.B., a minor and legally
incapacitated individual, and
through his parent, AZEZA
KASHAM,

Plaintiffs,

v.

ANN ARBOR
HOUSING COMMISSION,
a municipal entity, BETH
YAROCH, JENNIFER HALL,
MAKIA SLAUGHTER, THOMAS
JAMES IRVINE, ERIC SEXTON
and TIMOTHY OLIVIER, each in their
individual and official capacities,

Defendants.

Civil Action No: 2:26-cv-10845
Hon:

**COMPLAINT AND
DEMAND FOR A JURY
TRIAL**

THOMAS G. KRALL (P75303)
Krall Law Offices, PLLC
Attorney for Plaintiffs
26640 Harper Ave.
St. Clair Shores, MI  48080
(586) 299-1300
tom@gokralllaw.com

## COMPLAINT

NOW COMES Plaintiff, G.B., By his natural mother, AZEZA KASHAM, by and through counsel, KRALL LAW OFFICES, PLLC, and for his Complaint against Defendants states as follows:

### I. INTRODUCTION

1. This is an action for the grave injuries sustained by a disabled minor, G.B., who fell through a rotten and structurally unsound bathroom floor in his family's

apartment. The catastrophic injury was the direct result of the Defendants' deliberate, reckless, and intentional conduct in ignoring a dangerous and worsening structural defect for over four years, despite being put on repeated notice of the hazard.

2. Plaintiffs bring this action under 42 U.S.C. § 1983 for the violation of G.B.'s constitutional rights, including his right to life and bodily integrity guaranteed by the Fourteenth Amendment. Plaintiffs also bring claims under the Fair Housing Act (FHA) and Title II of the Americans with Disabilities Act (ADA) for discrimination based on his disability and familial status.

3. Plaintiffs seek to hold the Defendants, Ann Arbor Housing Commission (AAHC), a government housing authority, and its various employees accountable for their conscious disregard for tenant safety and their deliberate indifference to the safety of a minor child with a disability. The Defendants' years of reckless inaction, despite full knowledge of the hazard, resulted in the foreseeable and preventable collapse of the bathroom floor and the minor Plaintiff's severe and permanent injury.

4. Plaintiffs seek compensatory and punitive damages as redress for the Defendants' discriminatory and reckless conduct, which subjected G.B. to severe and permanent harm in his own home.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is an action arising under the laws of the United States, specifically 42 U.S.C. § 1983, the Fair Housing Act, and Title II of the Americans with Disabilities Act.

6. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this Complaint occurred in Ann Arbor, Michigan, within Washtenaw County, within this District.

## III. PARTIES

7. Plaintiff G.B. is a minor residing in Ann Arbor, Michigan and is a person with a disability.

8.  Plaintiff G.B is a minor and legally incapacitated individual. Pursuant to Fed. R. Civ. P. 17(c)(1), his mother, AZEZA KASHAM, brings this action as his general guardian.

9.  Defendant ANN ARBOR HOUSING COMMISSION (AAHC) is a government housing authority and owner/operator of the building unit where the Plaintiff resided in Ann Arbor, Michigan. AAHC is a state actor for the purposes of 42 U.S.C. § 1983.

10. Defendant JENNIFER HALL is the Executive Director of AAHC. At all times relevant to this Complaint, Hall was acting under color of state law and within the course and scope of her employment with AAHC.

11. Defendant BETH YAROCH is a Deputy Director of AAHC. At all times relevant to this Complaint, Yaroch was acting under color of state law and within the course and scope of her employment with AAHC.

12. Defendant THOMAS JAMES IRVINE is the Head of Maintenance at AAHC. At all times relevant to this Complaint, Irvine was acting under color of state law and within the course and scope of his employment with AAHC.

13. Defendant ERIC SEXTON is a subordinate to the Head of Maintenance at AAHC. At all times relevant to this Complaint, Sexton was acting under color of state law and within the course and scope of his employment with AAHC

14. Defendant TIMOTHY OLIVIER is a former Head of Maintenance at AAHC who participated in conversations relating to the property where Plaintiff was injured. At all times relevant to this Complaint, Olivier was acting under color of state law and within the course and scope of his employment with AAHC.

## IV. FACTS

15. This action concerns the tragic and preventable injury of G.B., a minor and a person with a disability.

16. The Plaintiff's family moved into the unit owned and operated by Defendant AAHC sometime in late 2019 or early 2020.

17. Shortly after moving in, Plaintiff's mother, Azeza Kasham, began reporting issues with water damage and pests in the bathroom. Defendant Yaroch acknowledged these issues were indicative of water damage.

18. On or about August 27, 2020, less than a year after moving in, Azeza Kasham emailed Defendant Yaroch directly, reporting that the bathroom floor felt "hollow" and was "sinking in.

19. Defendant Yaroch, acting with the authority to address such complaints, acknowledged the floor was "rotted" by August 29, 2020, yet failed to initiate repairs or inspect the premises.

20. Rather than investigate or repair the known defect, Defendant Yaroch deliberately and recklessly failed to take action, instead blaming the family for "excessive water damage beyond normal use."

21. Defendant Yaroch informed Defendant Jennifer Hall of the condition, to which Defendant Hall directed Defendant Yaroch to send a maintenance crew to inspect and repair. An incident report revealed that the maintenance crew consisting of Thomas James Irvine and Eric Sexton failed to acknowledge Plaintiff's concerns as it was never acknowledged that Defendants Irvine and Sexton addressed it, let alone inspected it for potential wood rot.

22. This deliberate and reckless failure to investigate or remediate a known and worsening structural defect directly led to the foreseeable collapse of the bathroom floor.

23. The family's concerns persisted, and the floor's condition continued to deteriorate over the following years.

24. The defendants, including Yaroch, were aware of the worsening structural defect, yet chose not to repair the floor. An internal email from April 5, 2023, from former Head of Maintenance Timothy Olivier noted the floor had "about a half inch of give," further demonstrating defendants' knowledge of the hazard.

25. On March 15, 2024, Plaintiff G.B., a minor with a disability, was severely injured after stepping out of the bathtub and falling through the collapsed bathroom floor.

26. As a direct and proximate consequence of the Defendants' neglect, and intentional disregard for the safety of a family with a minor child and a person with a disability, Plaintiff suffered grave and severe injuries.

## COUNT I: VIOLATION OF 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE

27. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

28. At all times relevant to this Complaint, each Defendant was an employee and/or agent of the Ann Arbor Housing Commission (AAHC), acting under color of state law.

29. Defendants had actual knowledge of a substantial risk of serious harm to residents, including G.B., from the rotted and structurally unsound bathroom floor, based on repeated tenant complaints by the family and internal communications.

30. Each Defendant had actual knowledge of a substantial risk of serious harm to residents, including G.B., from the structurally unsound and rotted bathroom floor in the family's apartment. This knowledge is established by and through:
    a. On or about August 27, 2020, Defendants were placed on direct notice of the hazardous floor condition via email from Azeza Kasham notifying them the floor felt hollow and was sinking in.
    b. Deputy Director Beth Yaroch, acting within her management role, personally received this complaint and acknowledged that the floor was "rotted" as early as August 29, 2020
    c. Maintenance records, including the August 27, 2020, Tenant Work Order, further documented the family's complaint, providing objective evidence of the known hazardous condition
    d. On or about April 5, 2023, former Head of Maintenance Timothy Olivier sent an email acknowledging the continued and worsening condition of the floor, noting it had "about a half inch of give." This and other internal communications further illustrate the ongoing awareness of the hazard within the management and maintenance departments.
    e. Other defendants, including Executive Director Jennifer Hall, Deputy Director , Property Manager Makia Slaughter, Head of Maintenance Thomas James Irvine, and Maintenance Subordinate Eric Sexton, in their respective

5

roles and responsibilities, either received direct notice or were aware of the systemic and persistent failure to address the documented hazard.

31. Despite this actual knowledge, each Defendant, in their respective roles, acted with conscious disregard for the substantial risk of serious harm by failing to take timely and appropriate action to repair the floor.

32. The risk of the floor collapsing in a family's apartment after years of known structural decay was an objectively serious risk of harm to the residents, including the disabled minor Plaintiff.

33. Despite having this actual knowledge, each Defendant acted with conscious disregard for the substantial risk of serious harm by failing to take timely and appropriate action to inspect and repair the floor. Specifically:

   a. Defendant Beth Yaroch, despite acknowledging the "rotted" floor, consciously and deliberately chose not to repair it and falsely blamed the family for "excessive water damage," effectively closing the complaint without remediation.

   b. Defendant Timothy Olivier was aware of the floor's worsening condition in 2023 but consciously disregarded the risk by failing to ensure repairs were initiated while he was Head of Maintenance.

   c. Defendant Thomas James Irvine, as the subsequent Head of Maintenance, consciously disregarded the known hazard by failing to address the long-standing complaint and repair the floor

   d. Defendants Jennifer Hall and , as high-level administrators, consciously disregarded the known systemic failures within the maintenance department by failing to establish or enforce adequate policies to ensure timely and safe repairs of structural hazards.

   e. Defendant Makia Slaughter was the Plaintiff's Family's property manager and the issue was complained to her several times as well.

   f. Defendant Eric Sexton, in his capacity as a maintenance subordinate, was also in a position to be aware of and act on the hazard but consciously chose to disregard the risk by failing to address the repair, which was his duty to perform.

   g. Defendant Timothy Olivier knew about the required repairs and plead with deputy directors and Beth Yaroch to make the repairs before the condition worsened, or at least communicate the need to Defendant, executive director, Jennifer Hall.

34. The Defendants' conscious disregard was a deliberate choice to ignore a known and substantial risk of harm to residents.

35. The Defendants' conscious disregard for Plaintiff's safety was the direct and proximate cause of Plaintiff's grave injuries. But for their deliberate inaction and refusal to repair the floor, the collapse and resulting injury would not have occurred.

36. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff has suffered and continues to suffer grave and severe injuries, pain and suffering, medical expenses, and emotional distress.

37. The Defendants' conduct was malicious, wanton, or oppressive, entitling Plaintiff to an award of punitive damages against each individual Defendant.

38. WHEREFORE, Plaintiff requests judgment against Defendants on Count I for compensatory and punitive damages, and all other relief as the Court deems just and proper.

## COUNT II. VIOLATION OF 42 U.S.C. § 1983 – STATE-CREATED DANGER

39. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

40. Defendants, acting under color of state law as employees and agents of the Ann Arbor Housing Commission (AAHC), violated G.B.'s right to life and bodily integrity, as guaranteed by the Fourteenth Amendment's Due Process Clause.

41. The state-created danger doctrine imposes liability when state actors, through their affirmative conduct, create or increase a known danger to an individual that results in harm.

42. The elements of a state-created danger claim require proving: (a) The harm was foreseeable and fairly direct, (b) a state actor acted with a degree of culpability that shocks the conscience, and (c) a state actor affirmatively used his or her authority to create a danger or render the plaintiff more vulnerable to danger.

43. The individual Defendants' deliberate and reckless conduct in ignoring a rotting and structurally unsound bathroom floor for over four years constitutes an affirmative act that created or increased the risk of serious harm to Plaintiff.

44. Defendants Beth Yaroch and Timothy Olivier, by acknowledging the severity of the problem (Yaroch noting the "rotted" floor and Olivier noting the "half inch of give") and then failing to repair it, actively chose to leave a known, worsening hazard in a child's home.

45. Defendants Yaroch and Hall's decision to close the complaint and blame the family for "excessive water damage" was a deliberate and reckless affirmative act that closed off any path to remediation and actively increased the risk that a foreseeable collapse would occur.

46. Defendants Irvine, Sexton, Slaughter, and Brand, through their inaction and failure to address the known and documented structural defect for an extended period, actively tolerated a policy or custom of ignoring known hazards, which created a dangerous environment.

47. The Defendants' collective conduct was a deliberate choice to ignore a known and substantial risk of harm to Plaintiff and his family.

48. This conduct goes beyond mere negligence. Intentionally allowing a known, worsening hazard like a rotted floor to persist in a family's home for years, despite repeated notice and internal acknowledgments, is a course of action so extreme and unreasonable that it shocks the conscience.

49. The harm that ultimately occurred, the floor collapsing under the weight of a minor and a person with a disability, was foreseeable and fairly direct. The collapse of a rotted floor is a predictable consequence of prolonged neglect.

50. The individual Defendants, by failing to repair the floor, affirmatively used their authority to create a danger and expose Plaintiff to a harm he would not have otherwise faced if the premises had been maintained in a safe and habitable condition, as required by law.

51. Defendant AAHC, through the actions of its policymakers and agents, is also liable for the state-created danger. The multi-year failure to address the hazard is evidence of a widespread custom or official policy of deliberate indifference within the housing authority that created the danger.

52. The Defendants' affirmative conduct in creating and increasing the danger was the direct and proximate cause of Plaintiff's grave injuries. But for their egregious and reckless actions, the floor would have been repaired, and the collapse would have been prevented.

53. As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff has suffered and continues to suffer grave and severe injuries, pain and suffering, medical expenses, embarrassment and emotional distress.

54. WHEREFORE, Plaintiff requests judgment against Defendants on Count II for compensatory and punitive damages, and all other relief as the Court deems just and proper.

## COUNT III. VIOLATION OF 42 U.S.C. § 1983 – MUNICIPAL LIABILITY UNDER *MONELL*

55. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

56. This claim is brought against Defendant Ann Arbor Housing Commission (AAHC), a government entity that can be held liable under 42 U.S.C. § 1983 for the unconstitutional actions of its employees and officials.

57. As established in *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), a government entity is not liable solely on the basis of *respondeat superior* (vicarious liability). Instead, liability attaches when the constitutional violation is caused by an official policy, a widespread custom, or a deliberate indifference to the need for better training or supervision that is so obvious it amounts to a policy.

58. The constitutional violations suffered by G.B. were caused by a widespread custom or official policy of deliberate indifference within AAHC regarding tenant safety and the handling of maintenance issues.

59. The systemic failure to address the known and worsening bathroom floor defect for over four years, despite explicit notice to multiple levels of management and maintenance staff, is evidence of a widespread custom or practice of ignoring serious maintenance requests. This custom was not an isolated incident but rather a permanent and well-settled practice that had the force of law within AAHC.

60. The policymakers within AAHC, including Executive Director Jennifer Hall, Deputy Directors Beth Yaroch and former Head of Maintenance Timothy Olivier, and current Maintenance Head Thomas James Irvine, were aware of the systemic failures. Their consistent failure to act and enforce adequate policies or procedures for high-priority maintenance items demonstrates their deliberate indifference to the rights and safety of the tenants they serve.

61. The failure of AAHC to properly train its employees, particularly maintenance staff such as Timothy Olivier, Eric Sexton and Thomas James Irvine as well as managers such as Beth Yaroch, and Makia Slaughter, on the importance of addressing structural defects and the proper handling of tenant complaints regarding safety issues was so obvious and likely to result in a constitutional violation that it constitutes a policy of deliberate indifference.

62. Specifically, the unconstitutional conduct of Deputy Director Beth Yaroch in acknowledging the rotted floor, closing the complaint, and falsely blaming the family, and the inaction of other maintenance personnel, demonstrates the execution of a pervasive custom rather than an isolated error.

63. AAHC's policy or custom of deliberate indifference was the moving force behind the constitutional violations that caused G.B.'s grave injuries. But for the systemic failings within AAHC, the maintenance request would have been properly handled, the floor repaired, and the injury avoided.

64. The pervasive nature of AAHC's unconstitutional custom is directly evidenced by the multi-year history of the unaddressed complaint and the knowledge of multiple employees across different departments and roles.

65. As a direct and proximate result of Defendant AAHC's unconstitutional custom and policy of deliberate indifference, G.B. suffered a deprivation of his right to bodily integrity, resulting in grave injuries.

66. As a direct and proximate result of Defendants' discriminatory and reckless conduct, Plaintiff has suffered and continues to suffer significant damages, including but not limited to severe pain and suffering, medical expenses, embarrassment and emotional distress

67. WHEREFORE, Plaintiff requests judgment against Defendant AAHC on Count III for compensatory damages and all other relief as the Court deems just and proper.

## COUNT IV. VIOLATION OF 42 U.S.C. § 1983 – SUPERVISORY LIABILITY

68. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

69. This claim is brought against Defendants Jennifer Hall, Beth Yaroch, , Thomas James Irvine, Makia Slaughter, and Timothy Olivier, in their individual capacities, for their acts and omissions under color of state law.

70. Supervisory liability under 42 U.S.C. § 1983 is not based on vicarious liability. Instead, it requires that the supervisor either personally participate in a constitutional violation or that there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. A causal connection can be established by showing that the supervisor acted with deliberate indifference to a known and substantial risk of harm, and that this indifference caused the harm.

71. Defendants Hall, Yaroch, Irvine, Slaughter and Olivier all held supervisory positions of authority within AAHC, and were responsible for the safe maintenance of the apartment building where Plaintiff resided.

72. As supervisors, these Defendants had actual knowledge, or were deliberately indifferent to, a substantial risk of serious harm to individuals living at the unit, including G.B., posed by the rotted, sinking, and structurally unsound bathroom floor. This knowledge is established by:
   a. The August 27, 2020, email from Azeza Kasham provided direct notice of the hazardous condition to Beth Yaroch;
   b. The April 5, 2023, email from Timothy Olivier, acknowledging the floor's continued deterioration, demonstrates internal awareness of the long-standing hazard; and
   c. As high-level administrators (Hall, Yaroch, Brand, and Slaughter) and heads of maintenance (Irvine, Olivier), these Defendants are responsible for overall safety policies and oversight. The long-standing nature of the complaint and the documented hazard strongly suggest they had actual knowledge of the systemic failure or consciously disregarded it.

73. Despite having actual knowledge of this substantial risk, these Defendants acted with conscious disregard for Plaintiff's safety by failing to take reasonable measures to mitigate the known risk. Their inaction and failure to direct subordinates to repair the floor or establish a policy for high-priority maintenance items constitutes a pattern of deliberate indifference.

    a. Beth Yaroch's conscious disregard is evidenced by her acknowledgment of the "rotted" floor and her subsequent decision to blame the family and fail to initiate a repair;

    b. Timothy Olivier's conscious disregard is evidenced by his awareness of the continued deterioration of the floor in 2023 and his failure to ensure it was repaired while he was head of maintenance; and

    c. Jennifer Hall, Makia Slaughter and Thomas James Irvine's conscious disregard is evidenced by their failure to create or enforce adequate policies and procedures to address known hazards, particularly after multiple levels of management and maintenance were made aware of the issue over a four-year period.

74. The supervisory Defendants' conduct in consciously disregarding their duties by failing to ensure the known hazard was addressed rises to the level of deliberate indifference.

75. There is a sufficient causal nexus between the supervisory Defendants' deliberate indifference to the known hazard and the constitutional violation suffered by Plaintiff. Their failure to act was the moving force that caused the serious harm to Plaintiff.

76. As a result of these Defendants' deliberate indifference, Plaintiff suffered grave injuries, severe pain, medical expenses, embarrassment and emotional distress

77. WHEREFORE, Plaintiff requests judgment against Defendants on Count IV for compensatory and punitive damages, and all other relief as the Court deems just and proper.

## COUNT V. VIOLATION OF THE FAIR HOUSING ACT (FHA) – DISABILITY DISCRIMINATION

78. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

79. This claim is brought against Defendant AAHC as a government housing authority and provider of housing services, and against Defendants Jennifer Hall, Beth Yaroch, , Makia Slaughter, Timothy Olivier and Thomas James Irvine in their individual and official capacities, for their discriminatory actions and omissions in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq.

80. The Fair Housing Act prohibits discrimination in the terms, conditions, or privileges of rental based on disability. This includes treating a disabled individual domiciled in the unit less favorably and failing to make reasonable accommodations when necessary for the tenant to have equal enjoyment of the dwelling.

81. A violation of the FHA based on intentional discrimination can be established by showing that the defendant acted with deliberate indifference to a known hazard that poses a risk to an individual domiciled in the unit with a disability.

82. Plaintiff G.B. is a person with a disability as defined by the Fair Housing Act.

83. Defendants had actual knowledge of G.B.'s disability and the potential for increased vulnerability to an unsafe living environment. This knowledge is established by Azeza Kasham's statement that one of her sons had passed away due to a congenital disease, to which doctors have confirmed Plaintiff, G.B., has been diagnosed with.

84. Defendants had repeated and direct notice of the dangerous and worsening condition of the rotted bathroom floor for over four years, which posed a substantial risk of serious harm to all residents, but particularly to a minor with a disability.

85. Despite this knowledge, Defendants, through the intentional and reckless actions of their employees and officials, exhibited deliberate indifference to Plaintiff's rights under the FHA by failing to address the known hazard.

86. Defendant Beth Yaroch's actions in acknowledging the "rotted" floor and subsequently closing the complaint without repairs, while blaming the family, constitutes an intentional act of discriminatory disregard for the safety of an individual domiciled in the unit with a disability.

87. Defendants Jennifer Hall (Executive Director), Timothy Olivier (Former Head of Maintenance), Makia Slaughter (Property Manager of Plaintiff's building), and Thomas James Irvine (Head of Maintenance) are responsible for the policies, customs, and practices within AAHC regarding tenant safety and maintenance. Their failure to ensure that a long-standing, known hazard affecting a disabled individual domiciled in the unit was addressed demonstrates a pattern of deliberate indifference at the policy-making and supervisory levels.

88. The Defendants' deliberate indifference to the known hazard, which was particularly dangerous for a person with a disability, resulted in a denial of housing privileges in a manner that constituted a constructive eviction and an unequal enjoyment of the dwelling.

89. The defendants' failure to repair the floor can also be viewed as a refusal to provide reasonable accommodation (a structurally sound and safe dwelling), which was necessary for Plaintiff to have an equal opportunity to use and enjoy the premises.

90. The discriminatory actions of the individual defendants, acting within the scope of their employment, are attributable to Defendant AAHC.

91. The discriminatory actions and deliberate indifference of the Defendants were the direct and proximate cause of Plaintiff's grave injuries.

92. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer grave and severe injuries, pain and suffering, medical expenses, and emotional distress.

93. WHEREFORE, Plaintiff requests judgment against Defendants on Count V for compensatory and punitive damages, and all other relief as the Court deems just and proper.

## COUNT VI. VIOLATION OF THE FAIR HOUSING ACT (FHA) – FAMILIAL STATUS DISCRIMINATION

94. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

95. This claim is brought against Defendant AAHC as a government housing authority and provider of housing services, and against Defendants, Jennifer

Hall, Beth Yaroch, and Thomas James Irvine in their individual and official capacities, for their discriminatory actions and omissions in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq.

96. The Fair Housing Act prohibits discrimination in the terms, conditions, or privileges of rental based on familial status, which includes households with children under the age of 18.

97. A violation of the FHA based on intentional discrimination can be established by showing that the defendant acted with deliberate indifference to a known hazard that poses a risk to a household with a minor child.

98. Plaintiff G.B. is a minor child with a disability, and his family is a household with familial status protected under the FHA.

99. Defendants had repeated and direct notice of the dangerous and worsening condition of the rotted bathroom floor for over four years. They were aware that a minor child resided in the apartment and was therefore particularly vulnerable to the risk of falling through the floor.

100. Despite this knowledge, Defendants, through the intentional and reckless actions of their employees and officials, exhibited deliberate indifference to Plaintiff's rights under the FHA by failing to address the known and worsening hazard.

101. Defendant Beth Yaroch's actions in acknowledging the "rotted" floor in 2020 and subsequently closing the complaint without repairs, while falsely blaming the family, constitutes an intentional act of discriminatory disregard for the safety of a tenant with a minor disabled child.

102. Defendants Jennifer Hall (Executive Director) Timothy Olivier (Former Head of Maintenance) and Thomas James Irvine (Head of Maintenance) are responsible for the policies, customs, and practices within AAHC regarding tenant safety and maintenance. Their failure to ensure that a long-standing, known hazard affecting a family with a minor child with disabilities was addressed demonstrates a pattern of deliberate indifference at the policy-making and supervisory levels.

15

103.   The defendants' deliberate indifference to the known hazard, which was particularly dangerous for a minor child with disabilities, resulted in a denial of housing privileges and an unequal enjoyment of the dwelling.

104.   The discriminatory actions and deliberate indifference of the individual defendants, acting within the scope of their employment, are attributable to Defendant AAHC.

105.   The discriminatory actions and deliberate indifference of the Defendants were the direct and proximate cause of Plaintiff's grave injuries.

106.   As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer grave and severe injuries, pain and suffering, medical expenses, and emotional distress

107.   WHEREFORE, Plaintiff requests judgment against Defendants on Count VI for compensatory and punitive damages, and all other relief as the Court deems just and proper.

## COUNT VII. VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

108.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

109.   This claim is brought against Defendant Ann Arbor Housing Commission (AAHC), a government housing authority and public entity, for its discriminatory actions and omissions in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq.

110.   Title II of the ADA prohibits discrimination on the basis of disability by public entities in the provision of services, programs, and activities. This includes ensuring that housing services and facilities are accessible and provided without discrimination.

111.   A violation of the ADA based on intentional discrimination can be established by showing that the public entity acted with deliberate indifference to a known hazard that poses a risk to an individual living within the unit with a disability.

112.   Plaintiff G.B., a minor, is a person with a disability as defined by the ADA.

113.  Defendant AAHC, as a public entity, is obligated to provide individuals domiciled in the unit, including Plaintiff, G.B., with a safe and habitable living environment free from discrimination based on disability.

114.  Defendant AAHC had actual knowledge of Plaintiff's disability and the potential for increased vulnerability to an unsafe living environment. This knowledge is established by Plaintiff's mother's statements and communications to AAHC staff.

115.  Defendant AAHC had repeated and direct notice of the dangerous and worsening condition of the rotted bathroom floor for over four years. This hazardous condition posed a substantial risk of serious harm to all residents but particularly created an inaccessible and unsafe environment for a person with a disability.

116.  Despite this knowledge, Defendant AAHC, through the intentional and reckless actions of its employees and officials, exhibited deliberate indifference to Plaintiff's rights under the ADA by failing to address the known hazard.

117.  The defendants' deliberate indifference to the known hazard, which created an inaccessible and unsafe environment in a manner that constituted a constructive eviction for a person with a disability, resulted in a denial of equal access to AAHC's services and facilities.

118.  AAHC failed to provide a safe and habitable dwelling, which was a necessary component for Plaintiff's equal enjoyment of the housing provided by the public entity.

119.  The discriminatory failure to repair the hazardous floor is a clear violation of AAHC's obligations under the ADA.

120.  The discriminatory actions and deliberate indifference of Defendant AAHC were the direct and proximate cause of Plaintiff's grave injuries.

121.  As a direct and proximate result of Defendant AAHC's discriminatory conduct, Plaintiff has suffered and continues to suffer grave and severe injuries, pain and suffering, medical expenses, embarrassment and emotional distress.

122.   WHEREFORE, Plaintiff requests judgment against Defendant AAHC on Count VII for compensatory damages and all other relief as the Court deems just and proper.

## COUNT VIII: CONSPIRACY TO VIOLATE CIVIL RIGHTS (42 U.S.C. § 1985)

123.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

124.   This claim is brought against the individual Defendants, including Jennifer Hall, Beth Yaroch, Thomas James Irvine, Eric Sexton, and Timothy Olivier, and Makia Slaughter for conspiring to violate G.B.'s civil rights under 42 U.S.C. § 1985.

125.   A cause of action under § 1985(3) requires proof of four elements: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to the person or property of the plaintiff.

126.   The discriminatory purpose required for a § 1985(3) claim can be inferred from the discriminatory actions and inaction of the defendants toward a protected class (in this case, based on disability and familial status).

127.   The individual Defendants conspired with one another to deprive Plaintiff of his constitutional and federal statutory rights, including his right to bodily integrity under the Fourteenth Amendment, and his right to non-discriminatory housing under the FHA and ADA.

128.   The agreement constituting the conspiracy can be inferred from the multi-year pattern of inaction and the coordinated, yet ultimately grossly negligent, response to Plaintiff's complaints. This includes:
   a. Beth Yaroch's specific actions in receiving the tenant complaints, acknowledging the rot, then blaming the family and closing the file without repair;
   b. The knowledge of Timothy Olivier in 2023 acknowledging the worsening condition of the floor, without taking action;
   c. The failure by Property Manager Makia Slaughter to redress or communicate with Plaintiff's family relating to the issues, choosing to ignore Plaintiff's

family and address their grievances directly with Defendants Beth Yaroch and Jennifer Hall, rather than providing any humane customer service or care regarding the issue Plaintiff had with the property;

d. The overall inaction and failure to provide proper training or oversight by the executive and supervisory defendants, Jennifer Hall, Beth Yaroch, Timothy Olivier and Thomas James Irvine, despite being aware of the systemic issues and the specific hazard; and

e. The failure of maintenance personnel like Eric Sexton to address a known and documented hazard, in concert with the negligence of his superiors.

129.   The purpose of this conspiracy was to deny Plaintiff a safe and habitable dwelling, in disregard of his rights under the Fourteenth Amendment, FHA, and ADA, particularly given his status as a disabled minor. The multi-year and multi-employee pattern of inaction strongly suggests a tacit understanding and agreement to avoid the costly repair at the expense of tenant safety.

130.   The individual Defendants, in furtherance of this conspiracy, committed overt acts, including:

a. Refusing to inspect and repair the known structural defect in the bathroom floor;

b. Falsely blaming the family for the damage;

c. Intentionally delaying and obfuscating the repair process; and

d. Failing to train or supervise maintenance and management staff to properly handle and address known safety hazards.

131.   As a direct result of this conspiracy and the overt acts in furtherance of it, Plaintiff G.B. suffered grave injuries.

132.   The Defendants' conspiracy and the overt acts taken in furtherance of it were a direct and proximate cause of Plaintiff's grave injuries.

133.   As a direct and proximate result of the Defendants' conspiracy and resulting unconstitutional and discriminatory conduct, Plaintiff has suffered and continues to suffer grave and severe injuries, pain and suffering, medical expenses, and emotional distress

134.   WHEREFORE, Plaintiff requests judgment against Defendants on Count VIII for compensatory and punitive damages, and all other relief as the Court deems just and proper.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff G.B., by his Guardian and natural parent, Azeza Kasham, by and through counsel, KRALL LAW OFFICES, PLLC, respectfully requests that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants, granting the following relief:

a. An award of compensatory damages in an amount to be determined at trial against all Defendants to fully compensate Plaintiff for his grave injuries, emotional distress, embarrassment, and severe pain and suffering, emotional distress, medical expenses, and the loss of the safe use and enjoyment of his dwelling;

b. An award of punitive damages against the Individual Defendants (Jennifer Hall, Beth Yaroch, Thomas James Irvine, Eric Sexton, and Timothy Olivier) in an amount to be determined at trial to punish their malicious, wanton, and oppressive conduct and to deter similar misconduct in the future;

c. An order for injunctive relief against Defendant ANN ARBOR HOUSING COMMISSION, to mandate:
    i. The implementation of a constitutionally adequate maintenance policy that requires timely inspection and repair of known structural hazards;
    ii. The revision of existing policies to ensure tenant complaints regarding safety issues are addressed with deliberate speed and not ignored for years; and
    iii. A review and reformation of all policies and procedures related to responding to hazards that particularly affect disabled individuals and minors, as required by the FHA and ADA.

d. A declaration that the Defendants' conduct as alleged herein violated and continues to violate Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment, the Fair Housing Act, and Title II of the Americans with Disabilities Act;

e. An award of attorney's fees and costs of this action as provided by 42 U.S.C. § 1988, and any other applicable statutes; and

f. Any other and further relief as this Court may deem just and proper.

Dated: March 13, 2026                          Respectfully Submitted,

                                               */s/ Thomas G. Krall*
                                               Thomas G. Krall (P75303)
                                               Krall Law Offices, PLLC
                                               Attorney for Plaintiff
                                               26640 Harper Avenue
                                               Saint Clair Shores, MI 48081

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 13, 2026                          Respectfully Submitted,

                                               /s/ Thomas G. Krall
                                               Thomas G. Krall (P75303)
                                               Krall Law Offices, PLLC
                                               Attorney for Plaintiff
                                               26640 Harper Avenue
                                               Saint Clair Shores, MI 48081